**In re Todd Richard GREMLER and Rosealyn Dale Gremler, Debtors.**

**Rosealyn D. GREMLER, Plaintiff,**

v.

**GREAT LAKES HIGHER EDUCATION CORPORATION, Defendant.**

**Bankruptcy No. 90–03210–JES.
Adv. No. 90–0299.**

United States Bankruptcy Court,
E.D. Wisconsin.

March 29, 1991.

---

Mark D. Alberg, Tomahawk, Wis., Attorney for plaintiff-debtor.

Lloyd J. Blaney, Madison, Wis., for defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This case centers upon § 523(a)(8) [1] of the Bankruptcy Code. It requires a ruling on whether two educational loans obtained by the debtor, Rosealyn D. Gremler, are dischargeable. An educational loan is nondischargeable unless such exception to discharge will impose an undue hardship upon the debtor or unless the educational loan first became due more than five years before the filing of the debtor's bankruptcy petition. [2] Undue hardship is not involved in this case. The focus here is whether the 5-year time limit has run. The debtor contends that the time period for both loans expired, and they are therefore discharged. Great Lakes Higher Education Corporation f/k/a Wisconsin Higher Education Corporation ("Great Lakes") counters by asserting that due to a series of three suspension periods, the 5-year time limit had not expired when the bankruptcy petition was filed. Both parties filed cross motions for summary judgment together with a stipulation of facts. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

1. § 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

2. The 5-year time period has since been changed to seven years by Public Law 101-647 (Crime Control Act of 1990), signed into law on November 29, 1990. Because this recent amendment is effective as of May 28, 1991, it has no application in the case at bar.

## FACTS

The debtor obtained two educational loans, each for $1,186, under the Wisconsin Guaranteed Student Loan Program. The first loan was acquired on September 8, 1983, and the second loan was acquired on October 10, 1983. Both loans first became due on September 1, 1984. The initial payment schedule dated April 24, 1984 called for the debtor to make 58 payments of $50.58 per month beginning September 1, 1984 and ending October 1, 1988.

The debtor made no payments under this initial repayment schedule. On April 8, 1987, the debtor entered into a temporary "Defaulted Loan Forbearance Agreement" with Great Lakes which provided a new repayment schedule of $50 per month commencing April 28, 1987 and ending October 28, 1987. When this forbearance agreement terminated, the loan balance was due unless a new forbearance agreement was entered into by the parties. This agreement (as well as two subsequent forbearance agreements between the parties) stated that, "Failure to make any payment when due will void this agreement."

The debtor made all payments under the April 8, 1987 forbearance agreement. However, the payments were made late. A second forbearance agreement was entered into on October 23, 1987. This second agreement called for payments of $101 per month commencing November 28, 1987 and ending May 28, 1988. As in the case of the first forbearance agreement, the debtor made all payments, but made them late.

At the conclusion of the second forbearance agreement and before entering into any further agreement, the debtor made four sporadic payments varying from $50 per month to $150 per month.

On September 28, 1989, the parties entered into a third forbearance agreement which provided for monthly payments of $50 commencing October 15, 1989 and ending March 15, 1990. During this period, the debtor made two $50 payments, one of which was tardily paid. No further payments were remitted by the debtor.

On June 15, 1990, the debtor filed a voluntary petition in bankruptcy under chapter 7. The parties have stipulated that as of November 3, 1990 the balance due on the two educational loans totalled $1,815.11.

## LAW

█ The court must decide what constitutes the 5–year period since the first installment payment became due on September 1, 1984. A loan "first becomes due" within the meaning of § 523(a)(8)(A) when the first installment is due. *In re Nunn,* 788 F.2d 617, 619 (9th Cir.1986). In light of the three forbearance agreements, if the particular times during all of the three forbearance agreements are tolled, Great Lakes prevails since the time period would then total 4 years and 135 days. If these particular times are not tolled, the total time exceeds the statutory 5–year period, and the debtor prevails.[3]

In *Matter of Eckles,* 52 B.R. 433 (D.C. Wis.1985), The Honorable Terence T. Evans, United States District Court Judge for this district, held that a change in the repayment schedule, which in effect suspends the original repayment period and of necessity substitutes another period, is an "applicable suspension of the repayment period" within the meaning of § 523(a)(8)(A). Subsequent cases have followed *Eckles. See In re Barciz,* 123 B.R. 771 (Bankr. N.D. Ohio W.D.1990). The debtor, however, attempts to distinguish *Eckles* from the case at bar because of particular language in each of the three forbearance agreements which states that, in the event of a default, the agreements are "void." The debtor then argues that, because the agreements are "void," the particular time periods during the three forbearance agreements must be added to the 4 years and 135 days and concludes that, because the revised total

---

**3.** If the time during the three forbearance agreements is not tolled, the court calculated the total time period at 5 years and 289 days. Debtor's counsel calculated this time period under these circumstances at 1,985 days, or 5 years and 160 days. In either event, this time would exceed the 5–year period.

would then exceed five years, the two educational loans are dischargeable.

■ The basic issue, therefore, is whether the word "void" as used really was intended to mean "void" or was intended to mean "voidable." There is an important distinction between "void" and "voidable" in contracts and confusion has resulted from the fact that a contract is sometimes said to be void when no more is intended than it is voidable. 17A Am. Jur.2d, Contracts, § 7 (1964 & Supp.1990). A void contract is no contract at all, unlike a voidable contract which is valid and binding until it is avoided by the party entitled to avoid it. 17A Am.Jur.2d, Contracts, § 7 (1964 & Supp.1990). In the case at bar, the court is satisfied that both parties clearly understood that the provision dealing with failure on the part of the debtor to make any payment was incorporated solely for the benefit and protection of Great Lakes and that any default by the debtor was not intended to inure to the debtor's benefit. 3A *Corbin on Contracts* § 761 (1951 & Supp.1991) declares:

> Frequently, there is included in a contract an express provision to the effect that if payments are not made exactly as agreed, or if clear title is not made by a stated time, or if some other performance by one of the parties is not rendered, the contract shall be "null and void." Such a provision as this seldom means what it appears to say. Generally, what is meant is that the duty of one of the parties shall be conditional on the making of payment or the tender of perfect title or the rendition of other specified performance by the other party exactly as agreed. If such a provision as this is held to mean just what it says, the contract would in effect be an "option" contract, the option being in the party who is to pay or to convey or to render the performance on the failure of which the contract is to be "null and void." If he concludes that the contract is not to his advantage, all that he needs to do is to withhold payment; whereupon the contract becomes "null and void" and incapable of enforcement by either party.

The parties never intended "void" to mean that either party can cause the agreement to become a nullity and thereby eliminate the suspension period under the forbearance agreements. It was never intended to give a loophole of escape from the contract to the defaulting party. 3A *Corbin on Contracts* § 761 (1951 & Supp. 1991). A party cannot breach an agreement for his own advantage when the other party, in reliance upon the contract, has partly performed. *Lumbermen's Mutual Casualty Co. v. Royal Indemnity Co.*, 10 Wis.2d 380, 103 N.W.2d 69 (1960). Great Lakes always had the ability to waive any defaults by the debtor and demand performance by the debtor without giving the debtor the ability to eliminate the suspension period. The debtor's actions in making payments under the forbearance agreements, albeit not timely, were a clear expression that she considered the forbearance agreements as being operative. When Great Lakes accepted these late payments, it waived any defaults, and it also treated the agreements as valid.

■ The result sought by the debtor would encourage attempts by debtors under similar circumstances to enter into forbearance agreements, thereafter default, and after the expiration of the statutory time period, discharge those educational loans in bankruptcy. This would circumvent the spirit and purpose which the forbearance agreements were intended to accomplish. As Judge Evans observed in *Eckles*, "That result would thwart the concern that Congress felt for the integrity of the loan program." *Eckles*, 52 B.R. at 435. While the court must not redraft an agreement, it must adopt a sensible construction which would result in a reasonable, fair and just result. *United Farm Agency of Wisconsin, Inc. v. Klasen*, 112 Wis.2d 634, 334 N.W.2d 110 (1983).

The court concludes that the 5–year statutory time period had not expired, and the debtor's obligations arising out of her two educational loans are not dischargeable. Great Lakes' motion for summary judg-

ment is granted, and the debtor's motion for summary judgment is denied.